## COMPOSITE EXHIBIT 1

☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION ☒ CIVIL ☐ OTHER ☐ DISTRICTS | SUMMONS 20 DAY CORPORATE SERVICE (a) GENERAL FORMS | CASE NUMBER 2016-CA-012265-01 |
|---|---|---|
| PLAINTIFF(S) EMERGENCY SERVICES OF ZEPHYRHILLS, P.A.,ET AL. | VS. DEFENDANT(S) COVENTRY HEALTH CARE OF FLORIDA, INC. | SERVICE 6/9/16 DR 1:20 PM 782 |

THE STATE OF FLORIDA:

To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and copy of the complaint or petition in this action on

defendant(s): ___COVENTRY HEALTH CARE OF FLORIDA, INC.___

By Serving its Registered Agent, CT Corporation System

1200 South Pine Island, Plantation, Florida 33324

Each defendant is required to serve written defense to the complaint or petition on

Plaintiff's Attorney: Harvey W. Gurland, Jr., P.A.

whose address is: Duane Morris LLP, 200 S. Biscayne Blvd., Suite 3400 Miami, Florida 33131, hwgurland@duanemorris.com; nmcastillo@duanemorris.com; pnmendoza@duanemorris.com

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days.**" after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| HARVEY RUVIN CLERK of COURTS | DEPUTY CLERK | DATE JUN 09 2016 |
|---|---|---|

CLOCK IN

**AMERICANS WITH DISABILITIES ACT OF 1990**

**ADA NOTICE**

"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."

CLK/CT. 314 Rev. 02/16                    Clerk's web address: www.miami-dadeclerk.com

Filing # 41490405 E-Filed 05/13/2016 05:09:46 PM

☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION ☒ CIVIL ☐ DISTRICTS ☐ FAMILY ☐ OTHER | CIVIL COVER SHEET | CASE NUMBER |
| --- | --- | --- |
| **PLAINTIFF** EMERGENCY SERVICES OF ZEPHYRHILLS, P.A., INPHYNET CONTRACTING SERVICES, LLC, INPHYNET SOUTH BROWARD, LLC, IPN EMERGENCY PHYSICIANS OF NORTH FLORIDA, P.A., et al. | **VS. DEFENDANT** COVENTRY HEALTH CARE OF FLORIDA, INC. | **CLOCK IN** |

The civil cover sheet and the information contained here does not replace the filing and service of pleadings or other papers as required by law. This form is required by the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075. See instructions and definitions on reverse of this form.

TYPE OF CASE (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x in both the main category and subcategory boxes.

☐ 001 - Eminent Domain
☒ 003 - Contracts and Indebtedness
☐ 010 - Auto Negligence
☐ 022 - Products Liability
☐ 023 - Condominium
☐ **Negligence - Other**
   ☐ 097 - Business Governance
   ☐ 098 - Business Torts
   ☐ 099 - Environmental/Toxin Tort
   ☐ 100 - Third Party Indemnification
   ☐ 101 - Construction Defect
   ☐ 102 - Mass Tort
   ☐ 103 - Negligent Security
   ☐ 104 - Nursing Home Negligence
   ☐ 105 - Premises Liability - Commercial
   ☐ 106 - Premises Liability - Residential
   ☐ 107 - Negligence - Other
☐ **Real Property/Mortgage Foreclosure**
   ☐ 108 - Commercial Foreclosure $0 - $50,000
   ☐ 109 - Commercial Foreclosure $50,001 - $249,999
   ☐ 110 - Commercial Foreclosure $250,000 - or more
   ☐ 111 - Homestead Residential Foreclosure $0 - $50,000
   ☐ 112 - Homestead Residential Foreclosure $50,001 - $249,999
   ☐ 113 - Homestead Residential Foreclosure $250,000 or more
   ☐ 114 - Non-Homestead Residential Foreclosure $0 - $50,000
   ☐ 115 - Non-Homestead Residential Foreclosure $50,001 - $249,999
   ☐ 116 - Non-Homestead Residential Foreclosure $250,000 or more
   ☐ 117 - Other Real Property Actions $0 - $50,000
   ☐ 118 - Other Real Property Actions $50,001 - $249,999

   ☐ 119 - Other Real Property Actions $250,000 or more
☐ **Professional Malpractice**
   ☐ 094 - Malpractice - Business
   ☐ 095 - Malpractice - Medical
   ☐ 096 - Malpractice - Other professional
☐ **Other**
   ☐ 120 - Antitrust/Trade Regulation
   ☐ 121 - Business Transactions
   ☐ 122 - Constitutional Challenge - Statute or Ordinance
   ☐ 123 - Constitutional Challenge - Proposed amendment
   ☐ 124 - Corporate Trust
   ☐ 125 - Discrimination - Employment or Other
   ☐ 126 - Insurance Claims
   ☐ 127 - Intellectual Property
   ☐ 128 - Libel/Slander
   ☐ 129 - Shareholder Derivative Action
   ☐ 130 - Securities Litigation
   ☐ 131 - Trade Secrets
   ☐ 132 - Trust Litigation
☐ **133 - Other Civil Complaint**
   ☐ 009 - Bond Estreature
   ☐ 014 - Replevin
   ☐ 024 - Witness Protection
   ☐ 080 - Declaratory Judgment
   ☐ 081 - Injunctive Relief
   ☐ 082 - Equitable Relief
   ☐ 083 - Construction Lien
   ☐ 084 - Petition for Adversary Preliminary Hearing
   ☐ 085 - Civil Forfeiture
   ☐ 086 - Voluntary Binding Arbitration
   ☐ 087 - Personal Injury Protection (PIP)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☒ No ☐

REMEDIES SOUGHT (check all that apply):

☒     monetary;

☒     non-monetary declaratory or injunctive relief;

☐     punitive

NUMBER OF CAUSES OF ACTION: [ 3 ]

(specify) _Count I: Violation of Section 641.513(5), Fla. Stat.; Count II: Breach of Implied-in-Fact Contract;_

_Count III: Unjust Enrichment/Breach of Implied-in-Law Contract_

IS THIS CASE A CLASS ACTION LAWSUIT?

☐ Yes

☒ No

HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?

☒ No

☐ Yes   If "Yes", list all related cases by name, case number, and court.

_____

_____

_____

IS JURY TRIAL DEMANDED IN COMPLAINT?

☒ Yes

☐ No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature _____   Florida Bar # _____284033_____
               Attorney or party                           (Bar # if attorney)

Harvey W. Gurland, Jr., P.A.                       May 13, 2016
(type or print name)                               Date

Filing # 41490405 E-Filed 05/13/2016 05:09:46 PM

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form shall be filed by the plaintiff or petitioner for the use of the Clerk of the Court for the purpose of reporting judicial workload data pursuant to Florida Statutes section 25.075.

---

**I.     CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>ELEVENTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>  COUNTY, FLORIDA

Case No.:_____
Judge: _____

Emergency Services of Zephyrhills, P.A., Inphynet Contracting Services, LLC, Inphynet South Broward, LLC, IPN Emergency Physicians of North Florida, P.A., Paragon Contracting Services, LLC, Paragon Emergency Services, LLC, Southwest Florida Emergency Management, Inc.
Plaintiff
          vs.
Coventry Health Care of Florida, Inc.
Defendant

---

**II.     TYPE OF CASE**

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability – commercial
    ☐ Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure $0 - $50,000
    ☐ Commercial foreclosure $50,001 - $249,999
    ☐ Commercial foreclosure $250,000 or more
    ☐ Homestead residential foreclosure $0 – 50,000
    ☐ Homestead residential foreclosure $50,001 - $249,999
    ☐ Homestead residential foreclosure $250,000 or more
    ☐ Non-homestead residential foreclosure $0 - $50,000

☐ Non-homestead residential foreclosure $50,001 - $249,999
☐ Non-homestead residential foreclosure $250,00 or more
☐ Other real property actions $0 - $50,000
☐ Other real property actions $50,001 - $249,999
☐ Other real property actions $250,000 or more

☐ Professional malpractice
    ☐ Malpractice – business
    ☐ Malpractice – medical
    ☐ Malpractice – other professional
☐ Other
    ☐ Antitrust/Trade Regulation
    ☐ Business Transaction
    ☐ Circuit Civil - Not Applicable
    ☐ Constitutional challenge-statute or ordinance
    ☐ Constitutional challenge-proposed amendment
    ☐ Corporate Trusts
    ☐ Discrimination-employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☒ No ☐

III.   **REMEDIES SOUGHT** (check all that apply):
      ☒   Monetary;
      ☒   Non-monetary
      ☐   Non-monetary declaratory or injunctive relief;
      ☐   Punitive

IV.   **NUMBER OF CAUSES OF ACTION: (     )**
(Specify)

   3

V.   **IS THIS CASE A CLASS ACTION LAWSUIT?**
      ☐   Yes
      ☒   No

VI.   **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
      ☒   No
      ☐   Yes – If "yes" list all related cases by name, case number and court:

VII.   **IS JURY TRIAL DEMANDED IN COMPLAINT?**
      ☒   Yes
      ☐   No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature s/ Harvey W. Gurland Jr.    FL Bar No.: 284033
    Attorney or party                           (Bar number, if attorney)

Harvey W. Gurland Jr.    05/13/2016
   (Type or print name)                             Date

Filing # 41490405 E-Filed 05/13/2016 05:09:46 PM

*CT2016000801*

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS DIVISION

CASE NO.:

EMERGENCY SERVICES OF
ZEPHYRHILLS, P.A., INPHYNET
CONTRACTING SERVICES, LLC,
INPHYNET SOUTH BROWARD, LLC, IPN
EMERGENCY PHYSICIANS OF NORTH
FLORIDA, P.A., PARAGON CONTRACTING
SERVICES, LLC, PARAGON EMERGENCY
SERVICES, LLC and SOUTHWEST FLORIDA
EMERGENCY MANAGEMENT, INC.,

        Plaintiffs,

vs.

COVENTRY HEALTH CARE OF FLORIDA,
INC.,

        Defendant.

_____/

## COMPLAINT

Plaintiffs, Emergency Services of Zephyrhills, P.A. ("Zephyrhills"), InPhyNet Contracting Services, LLC ("InPhyNet Contracting"), InPhyNet South Broward, LLC ("InPhyNet Broward"), IPN Emergency Physicians of North Florida, P.A. ("IPN"), Paragon Contracting Services, LLC ("Paragon Contracting"), Paragon Emergency Services, LLC ("Paragon Emergency") and Southwest Florida Emergency Management, Inc. ("Southwest Florida") are all emergency medicine group practices and hereby sue Coventry Health Care of Florida, Inc. ("Coventry") and allege as follows:

### Nature of Action

1.     This is an action concerning the rate at which Coventry reimburses the plaintiff emergency medicine groups for the emergency medical services the Plaintiffs' professionals provide to patients covered under commercial health plans, including Affordable Care Act Exchange products[1] ("Exchange products"), insured, operated or administered by the Defendant, Coventry (the patients are referred to as "Coventry Members").  Coventry has wrongfully paid the Plaintiffs at rates below both:  (1) the "usual and customary provider charges" in violation of Section 641.513(5), Florida Statutes (2016), for claims subject to that section; and, (2) below the reasonable value of the services in the marketplace required under *quantum meruit* by the implied-in-fact contract between the parties and/or the implied-in-law contract, for claims not subject to Section 641.513(5).

2.     Coventry has already adjudicated these claims and determined that all of the claims at issue in this action were for covered services rendered to Coventry Members, and Coventry has already paid all of the claims at issue, albeit at amounts less than the "usual and customary provider charges" and/or the reasonable value of the services.  Thus, this action concerns only the *rate of* payment and not the *right to* payment.  This action does <u>not</u> include any claims in which benefits were denied nor does it challenge any coverage determinations under an ERISA plan.  In this action, Plaintiffs are seeking to have Coventry comply with its obligation to pay them at rates that represent both the "usual and customary provider charges" required by statute and the reasonable value of their services in the marketplace required under *quantum meruit* based on their implied-in-fact and/or implied-in-law contract.

---

[1] Exchange products, as used herein, refers to plans sold on the Federal Marketplace on healthcare.gov.  These are <u>not</u> plans subject to ERISA, but rather governed by Florida law, including Section 641.513(5), Florida Statutes (2016).

3.       The Plaintiffs are obligated by law to provide emergency medicine services to Coventry Members, and Coventry is obligated by law to cover those services.  Further, Coventry, as a managed care organization licensed as an HMO, has a duty under Section 641.513(5) to reimburse Plaintiffs at rates that are, at a minimum, equivalent to the "usual and customary provider charges for similar services in the community."  Florida courts have interpreted this language as requiring payment at fair market value.  As Florida courts have held, the "intent of [Section 641.513(5)] is to ensure that the non-participating providers are adequately paid for a service they are required by law to perform." *Merkle v. Health Options*, 940 So. 2d 1190, 1196 (Fla. 4th DCA 2006).  For all of the claims at issue in this action, Plaintiffs were non-participating providers with Coventry and, as a result, did not agree to accept discounted rates from Coventry for their services and did not agree to be bound by Coventry's reimbursement policies or rate schedules.  Nevertheless, Coventry has not been paying Plaintiffs the fair market value of their services, an amount which Plaintiffs assert is the equivalent of 75% of Plaintiffs' charges.

4.       That is the amount that Coventry's own affiliates previously agreed in arms-length negotiations to pay participating Plaintiffs for emergency services to members covered by Coventry affiliates.  Thus, 75% of Plaintiffs' charges represents both the "usual and customary provider charges" (i.e., the fair market value of the services rendered by Plaintiffs), for claims subject to Section 641.513(5), and the reasonable value of the services for *quantum meruit* purposes, for claims not subject to that section.

5.       The impact of Coventry's underpayments on these group practices has been considerable and has left a balance due from Coventry, calculated based on the aggregate

difference between what Coventry has paid and 75% of Plaintiffs' charges, of close to $42 million.

## Parties

6.     Defendant Coventry Health Care of Florida, Inc. is a Florida for-profit corporation with its headquarters at 1340 Concord Terrace, Sunrise, Broward County, Florida. Coventry is licensed as a health maintenance organization ("HMO") pursuant to Chapter 641 of the Florida Statutes and provides managed care products and administrative services throughout Florida, including Miami-Dade County, Florida, and has an office for the transaction of its customary business in Miami, Florida.  Coventry is a subsidiary of Coventry Health Care, Inc., a national, publicly traded Fortune 500 company that operates health benefit plans and insurance companies and provides risk and fee-based managed care products and services.  Coventry Health Care, Inc. is itself a wholly-owned subsidiary of Aetna, Inc.

7.     Plaintiff Zephyrhills is a professional emergency medicine group practice which staffs the emergency department at Bayfront Health Dade City (f/k/a Pasco Regional Medical Center) in Dade City, Florida and resides at 14050 NW 14th Street, Suite 190, Ft. Lauderdale, Florida.

8.     Plaintiff InPhyNet Contracting is a professional emergency medicine group practice which staffs the emergency department at Delray Medical Center in Delray Beach, Florida, Memorial Regional Hospital in Hollywood, Florida, AMI Palm Beach Gardens Medical Center in Palm Beach Gardens, Florida, Parrish Medical Center in Titusville, Florida, Seven Rivers Regional Medical Center in Crystal River, Florida, and Tampa General Hospital in Tampa, Florida, and resides at 14050 NW 14th Street, Suite 190, Ft. Lauderdale, Florida.

9.     Plaintiff InPhyNet Broward is a professional emergency medicine group practice which staffs the emergency department at Memorial Regional Hospital in Hollywood, Florida, Memorial Hospital Miramar in Miramar, Florida, Memorial Regional Hospital North Campus in Hollywood, Florida, Memorial Hospital Pembroke in Pembroke Pines, Florida, Memorial Regional Hospital South in Hollywood, Florida, Memorial Urgent Care Center in Pembroke Pines, Florida, and Memorial Hospital West in Pembroke Pines, Florida and resides at 14050 NW 14th Street, Suite 190, Ft. Lauderdale, Florida.

10.     Plaintiff IPN is a professional emergency medicine group practice which staffs the emergency department at Shands Lake Shore Regional Medical Center in Lake City, Florida, Shands Live Oak Regional Medical Center in Live Oak, Florida, and Shands Starke Regional Medical Center in Starke, Florida and resides at 14050 NW 14th Street, Suite 190, Ft. Lauderdale, Florida.

11.     Plaintiff Paragon Contracting is a professional emergency medicine group practice which staffs the emergency department at Coral Gables Hospital in Coral Gables, Miami-Dade County, Florida, Good Samaritan Hospital in West Palm Beach, Florida, Hialeah Hospital in Hialeah, Miami-Dade County, Florida, Lakeside Medical Center in Belle Glade, Florida, Martin Medical Center in Stuart, Florida, Martin Emergency Center in Port St. Lucie, Florida, Martin Hospital South in Stuart, Florida, North Shore Medical Center in Miami, Miami-Dade County, Florida, North Shore Medical Center, FMC Campus in Ft. Lauderdale, Florida, North Shore Medical Center, FMC FSE in Davie, Florida, Palmetto General Hospital in Hialeah, Miami-Dade County, Florida, South Florida Baptist Hospital in Plant City, Florida, St Mary's Medical Center in West Palm Beach, Florida, Tradition Medical Center in Port St. Lucie, Florida, University of Miami Hospital in Miami, Miami-Dade County, Florida, West Boca

Medical Center in Boca Raton, Florida, and West Boca Medical Center in Coral Springs, Florida, and resides at 14050 NW 14th Street, Suite 190, Ft. Lauderdale, Florida.

12.     Plaintiff Paragon Emergency is a professional emergency medicine group practice which staffs the emergency department at Lakewood Ranch Medical Center in Bradenton, Florida, Manatee Memorial Hospital in Bradenton, Florida, Memorial Emergency Center-Atlantic in Jacksonville, Florida, Memorial Hospital of Jacksonville in Jacksonville, Florida, Memorial Emergency Center Julington in Saint Johns, Florida, Orange Park Medical Center in Orange Park, Florida, Parkwest Emergency Center in Jacksonville, Florida, and Winter Haven Hospital in Winter Haven, Florida and resides at 14050 NW 14th Street, Suite 190, Ft. Lauderdale, Florida.

13.     Plaintiff Southwest Florida is a professional emergency medicine group practice which staffs the emergency department at NCH Baker Hospital in Naples, Florida, Naples Community Hospital North in Naples, Florida, Naples North East in Naples, Florida, and Naples Community Hospital North in Naples, Florida and resides at 14050 NW 14th Street, Suite 190, Ft. Lauderdale, Florida.

## Jurisdiction and Venue

14.     The amount in controversy exceeds the sum of $150,000.00, exclusive of interest, attorney's fees and costs, and the defendant is engaged in substantial activity within Florida and maintains offices in Florida.

15.     Venue is proper in Miami-Dade County, Florida, because one of the Plaintiffs, Paragon Contracting, performs the professional emergency medicine services at issue in Miami-

Dade County and the Defendant Coventry has an office for the transaction of its customary business in Miami, Florida in Miami-Dade County.

16.     This case should be assigned to the Complex Business Litigation Section because of the nature of the case, which includes claims for breach of contract between businesses and a claim based on a statutory violation arising out of business dealings, the complexity of discovery, the number of parties, and because the amount in controversy exceeds $150,000.00 and involves the sale of services by or to business entities.

## Facts

17.     All of the Plaintiffs are emergency medicine group practices that staff the emergency departments at one or more hospitals or other licensed health care facilities 24 hours a day, seven days a week and provide emergency medical care and related services to patients, including Coventry Members, presenting to those emergency departments.

18.     In exchange for premiums, Coventry pays for health care services rendered to Members of its commercial health care products and platforms, including Exchange products, prepaid health care plans such as HMOs, and traditional insurance products such as indemnity plans and PPO products.

19.     Coventry also sells products related to government-sponsored programs, such as Medicare Advantage and managed Medicaid.  Those products are not at issue in this litigation, which arises only from claims involving Defendant's commercial and Exchange products.

20.     All of the Plaintiffs are obligated by both Florida and federal law to examine any individual presenting to the emergency department and to provide stabilizing treatment to any such individual with an emergency medical condition, regardless of the individual's insurance coverage or ability to pay.

21.    The Plaintiffs have all provided professional emergency medicine services to Coventry Members.

22.    With respect to the claims at issue in this action, none of the Plaintiffs had applicable participation agreements with Coventry, and their claims for reimbursement are therefore considered non-participating or out-of-network claims (hereinafter, "Non-Participating Claims").

23.    Five of the Plaintiffs, Zephyrhills, InPhyNet Contracting, InPhyNet Broward, Paragon Contracting and Paragon Emergency, were not participating with Coventry with respect to any Coventry products.  However, two of the Plaintiffs, IPN and Southwest Florida, were parties to the Coventry Health Care National Network, Inc. Participating Provider Agreement. Although that agreement does not govern the claims at issue in this action, it evidences what both Plaintiffs and Defendant's affiliates believed was the fair market value of Plaintiffs' services.  Specifically, for the Coventry products governed by that agreement -- "First Health Network, Coventry National Network and other affiliated PPO products" – Coventry agreed to pay and Plaintiffs' parent, TeamHealth, Inc., agreed to accept on behalf of its participating groups a rate of 75% of charges for emergency medicine services rendered to patients enrolled in such products.  Like the other Plaintiffs, IPN and Southwest Florida are non-participating with respect to all other Coventry products, including all of those at issue in this action.

24.    The Plaintiffs did not agree to accept discounted rates from Coventry or to be bound by Coventry's reimbursement policies or rate schedules with respect to any of the Non-Participating Claims for emergency medical services Plaintiffs rendered to Coventry Members.

25.    Section 641.513(5), Florida Statutes (2016), provides:

Reimbursement for services pursuant to this section by a provider who does not
have a contract with the health maintenance organization shall be the lesser of:

**DUANE MORRIS LLP**
200 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

8

(a) The provider's charges;

(b) The usual and customary provider charges for similar services in the community where the services were provided; or

(c) The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

26.      Florida law strikes a balance with respect to emergency services provided by non-participating providers such as the Plaintiffs:  the Plaintiffs must provide emergency care to all individuals presenting in the emergency department, regardless of insurance coverage; and managed care organizations licensed as HMOs, such as Coventry, must reimburse the Plaintiffs for providing that care to their members according to the dictates set forth by Section 641.513(5), Florida Statutes (2016).  Florida courts have interpreted the statute to impose a requirement on managed care organizations licensed as HMOs "to ensure that the non-participating providers are adequately paid for a service they are required by law to perform." *Merkle v. Health Options*, 940 So. 2d 1190, 1196 (Fla. 4th DCA 2006).

27.      Section 641.513(5) "clearly imposes a duty on [commercial payors] to reimburse non-participating providers according to the statute's dictates . . ." and creates a private right of action for providers to enforce its provisions against payors. *Merkle*, 940 So. 2d at 1194-97.

28.      Furthermore, Florida courts have interpreted the phrase "usual and customary provider charges for similar services in the community where the services were provided" under Section 641.513(5) to require payment of "fair market value" for the services rendered. *Baker County Med. Servs. v. Aetna Health Mgmt., LLC*, 31 So. 3d 842, 845-46 (Fla. 1st DCA 2010).

29.      While the statute is by its terms limited to the reimbursement required to be paid by managed care organizations licensed as HMOs to out-of-network emergency medicine physicians such as the Plaintiffs, in setting forth a framework to determine a fair rate of payment

for emergency medicine physicians, the Florida legislature also established a benchmark of "fair market value" that can be used to determine appropriate levels of reimbursement to non-contracted emergency medicine providers such as the Plaintiffs with respect to all of the commercial and Exchange products in which a given patient may be enrolled.

30. All of the claims for emergency medical services at issue in this action have already been adjudicated by Coventry and determined to be covered services.

31. The Plaintiffs did not, within 60 days of the submittal of any of the Non-Participating Claims, mutually agree with Coventry on a specific rate of reimbursement for that claim.

32. In arms-length negotiations with the parent entity of the Plaintiffs, many of Coventry's affiliates, including Coventry Health Care National Network, Inc. and First Health Group Corp., agreed to a rate of 75% of participating Plaintiffs' charges. By its terms, this agreement applied to all TeamHealth physician groups, including emergency medicine groups in Florida, that participated in the agreement, as amended. Plaintiff IPN was added as a participating group by amendment dated December 1, 2010, and by March 1, 2011, the agreement had been amended to add Plaintiff Southwest Florida as well. By 2013, the agreement applied to at least 20 TeamHealth emergency medicine groups nationwide and at least 10 physician groups in the state of Florida.

33. The fact that many of Coventry's affiliates executed a contract to pay participating Plaintiffs at 75% of their billed charges demonstrates that they believe that rate constitutes both the fair market value and the reasonable value of the emergency services Plaintiffs rendered.

34.     Coventry has at all material times approved Plaintiffs' rendering emergency medicine services to Coventry Members.

35.     Coventry is aware of its obligations to non-contracted providers such as the Plaintiffs.  Coventry is also aware that the Plaintiffs provided professional emergency medicine services to Coventry Members with the expectation and understanding that their services had been approved by Coventry and that they would be reimbursed by Coventry at rates reflecting (A) the lesser of (i) their billed charges or (ii) the "usual and customary provider charges for similar services" (i.e., fair market value), as provided by Section 641.513(5) for claims subject to that section and (B) the reasonable value in the marketplace, or *quantum meruit*, of the professional services they provided, for claims not subject to Section 641.513(5).

36.     Each Plaintiff has, at all relevant times, billed Coventry for the emergency medicine services its professionals have provided to Coventry Members at Plaintiffs' charges with the understanding that Coventry had agreed to pay them:  (A) the lesser of their billed charges or  fair market value  for claims subject to Section 641.513(5); and (b) the reasonable value of their services in the marketplace for claims not subject to that section.

37.     At all relevant times, Coventry has in fact consistently paid the Plaintiffs for the emergency medicine services their professionals provided to Coventry Members, albeit at amounts inappropriately below all of the following:  the Plaintiffs' billed charges,  fair market value and the reasonable value of their services in the marketplace.

38.     With full knowledge of its statutory obligations and implied agreement as described in detail both *supra* and *infra*, Coventry is obligated to pay for emergency medical services received by Coventry Members from each of the Plaintiffs at the emergency departments they staff.  Coventry's acknowledgement of its agreement is confirmed by the fact

that it has regularly and consistently issued payment on the Plaintiffs' claims for reimbursement for those services throughout that time, albeit at rates lower than what was owed.

39.     With respect to all of the Non-Participating Claims at issue in this action, Plaintiffs have never agreed to accept discounted rates from Coventry or to be bound by Coventry's reimbursement policies or rate schedules.

40.     Yet, the Explanation of Benefits notices Coventry sent to the Plaintiffs on the Non-Participating Claims cryptically included, for example, only an explanation such as the following: "Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement."

41.     Under Section 641.513(5), Florida Statutes (2016), Coventry is obligated to pay Plaintiffs, on claims subject to that section, the lesser of their billed charges and the "usual and customary provider charges for similar services in the community where the services were provided"; i.e., the fair market value of the services, as interpreted by Florida appellate courts.

42.     For claims not subject to 641.513(5), Coventry is obligated to pay Plaintiffs under its implied contract and the doctrine of *quantum meruit* the lesser of their billed charges or, if different, the reasonable value of the services Plaintiffs' professionals render to Coventry Members.

43.     At all material times, all necessary conditions precedent for Coventry to perform its obligations pursuant to the implied contract by issuing payment to each of the Plaintiffs were met.

44.     Coventry has not paid the Plaintiffs either their billed charges, the fair market value of their services or the reasonable value of their services.

45.     Regardless of the product under which Coventry members are covered, the rates paid by Coventry are less than required by law. For claims covered by Section 641.513(5), Coventry has not paid Plaintiffs the lesser of their charges or the fair market value of the services provided. For claims not covered by that section, Coventry has not paid plaintiffs the reasonable value of the services in the marketplace. The rates Coventry has paid Plaintiffs are less than the rates Plaintiffs received during the same time period from other, similar managed care organizations in the same communities and below the rates that Coventry's own affiliates agreed constituted fair market value and reasonable value for Plaintiffs' professional services.

46.     Florida courts have ruled that the "usual and customary provider charges" under Section 641.513(5), Florida Statutes (2016) are appropriately determined by looking to the results of arms-length negotiations, *see Baker County Med. Servs. v. Aetna Health Mgmt., LLC*, 31 So. 3d 842, 845-46 (Fla. 1st DCA 2010). Coventry's affiliates and TeamHealth negotiated the Coventry Health Care National Network, Inc. Participating Provider Agreement through arms-length negotiations and that agreement dictates reimbursement to participating Plaintiffs at the rate of 75% of the group's charges.

47.     Plaintiffs in this action seek a determination that Coventry: (1) has an obligation under Section 641.513(5) to pay the lesser of their billed charges or "the usual and customary provider charges for similar services in the community where the services were provided"; i.e., fair market value; (2) that Coventry has an obligation pursuant to an implied-in-fact or implied-in-law contract to pay Plaintiffs the reasonable value of their services in the marketplace; (3) that Coventry has failed to adhere to its obligations under Section 641.513(5); (4) that Coventry breached the implied contract; and (5) that Coventry has been unjustly enriched by its practice of underpaying the Plaintiffs.

48.     Coventry's refusal to pay the Plaintiffs the fair market value and/or the reasonable value of the professional emergency medicine services they have provided to Coventry Members has caused, and continues to cause the Plaintiffs to suffer damages in an amount equal to the difference between the amounts allowed and paid by Coventry and the fair market value and reasonable value of the services the Plaintiffs provide, plus the Plaintiffs' loss of use of that money.   In aggregate, the difference between the amounts allowed and paid by Coventry and 75% of Plaintiffs' charges for services rendered through March, 2016, is approximately $42 million.

## COUNT I
### Violation of Section 641.513(5)

49.     Plaintiffs re-allege and restate paragraphs 1 through 48 above as if they were fully set forth herein.

50.     Each of the Plaintiffs provided covered professional emergency medicine services to Coventry Members for which the Coventry, a managed care organization licensed as an HMO in Florida, was responsible for payment.

51.     At all material times, with respect to the Non-Participating Claims, Plaintiffs were non-participating emergency medicine providers that staffed the emergency departments at Bayfront Health Dade City (f/k/a Pasco Regional Medical Center), Delray Medical Center, AMI Palm Beach Gardens Medical Center, Parrish Medical Center, Seven Rivers Regional Medical Center, Tampa General Hospital, Memorial Regional Hospital, Memorial Regional Hospital - North Campus, Memorial Regional Hospital South, Memorial Hospital Miramar, Memorial Hospital Pembroke, Memorial Hospital West, Memorial Urgent Care Center, Shands Lake Shore Regional Medical Center, Shands Live Oak Regional Medical Center, Shands Starke Regional Medical Center, Coral Gables Hospital, Good Samaritan Hospital, Hialeah Hospital, Lakeside

Medical Center, Martin Medical Center, Martin Emergency Center, Martin Hospital South, North Shore Medical Center, North Shore Medical Center - FMC Campus, North Shore Medical Center - FMC FSE, Palmetto General Hospital, South Florida Baptist Hospital, St Mary's Medical Center, Tradition Medical Center, University of Miami Hospital, West Boca Medical Center in Boca Raton, West Boca Medical Center in Coral Spring, Lakewood Ranch Medical Center, Manatee Memorial Hospital, Memorial Emergency Center-Atlantic, Memorial Hospital of Jacksonville, Memorial Emergency Center Julington, Orange Park Medical Center, Parkwest Emergency Center, Winter Haven Hospital, NCH Baker Hospital, Naples Community Hospital North and Naples North East.

52.     Section 641.513(5), Florida Statutes (2006), provides:

Reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:

(a) The provider's charges;

(b) The usual and customary provider charges for similar services in the community where the services were provided; or

(c) The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

53.     Section 641.513(5) imposes a duty on Defendant Coventry, as a managed care organization licensed as an HMO, to reimburse Plaintiffs for their Non-Participating Claims according to the statute's dictates.

54.     Plaintiffs have a private right of action under the statute to enforce its provisions against Defendant Coventry.

55.     At all material times, each Plaintiff submitted its Non-Participating Claims to Defendant Coventry, setting forth its charges for reimbursement of the emergency medicine services its professionals rendered to Coventry Members.

56. At all material times, Defendant Coventry regularly and consistently issued payment on the Non-Participating Claims each of the Plaintiffs submitted for emergency medicine services rendered to Coventry Members, albeit at a rate less than the "usual and customary provider charges for similar services in the community where the services were provided" that Defendant was obligated to pay the Plaintiffs pursuant to Section 641.513(5).

57. Other than Coventry Health Care of Florida's implied agreement to pay Plaintiffs the reasonable value in the marketplace of the services Plaintiffs' professionals rendered to Coventry Members, Defendant Coventry and the Plaintiffs did not mutually agree on a specific charge for any of the Non-Participating Claims within 60 days of Plaintiffs' submittal of those claims. None of the Plaintiffs agreed to accept discounted rates from Defendant for their Non-Participating Claims, nor had they agreed to be bound by Defendant's reimbursement policies or rate schedules with respect to such claims.

58. At all material times, Defendant Coventry's reimbursement of each of the Plaintiffs for the Non-Participating Claims was in violation of Section 641.513(5) by failing to pay it the "usual and customary provider charges for similar services in the community where the services were provided," which Florida courts have interpreted as fair market value.

59. Florida courts have ruled that fair market value is appropriately determined by looking to the results of arms-length negotiations between commercial payors and providers rendering similar services.

60. In arms-length negotiations with the parent entity of the Plaintiffs, many of Coventry's affiliates agreed to a rate of 75% of participating Plaintiffs' charges. Coventry's own affiliates would not have executed the agreement had they not believed that this rate constituted the fair market value of Plaintiffs' professional emergency medicine services.

61.     As a result of Defendant Coventry's failure to fulfill its legal obligations to reimburse the Plaintiffs in accordance with the statute's dictates, each Plaintiff has suffered injury and is entitled to monetary damages from Defendant.

62.     The Plaintiffs seek compensatory damages, as permitted by applicable law, in an amount, which will continue to accrue through the date of trial as a result of Defendant Coventry's continuing violation of Section 641.513(5), equal to the difference between the amount allowed and paid by Defendant on each of the Non-Participating Claims and the fair market value of the services described in the claims, plus interest.

**WHEREFORE**, Plaintiffs pray that this Court:

Enter judgments against Defendant Coventry and for each Plaintiff in an amount representing the difference between the amounts paid by Defendant to Plaintiff for the Non-Participating Claims for emergency medicine services its professionals rendered to Coventry Members covered under commercial products to the date of the judgment and the fair market value, as determined by the finder of fact, plus interest.

Decree that Defendant Coventry must pay each Plaintiff going forward for its Non-Participating Claims for the emergency medicine services its professionals render to Coventry members at the lesser of their billed charges and fair market value of the services rendered.

Award such further relief as this Court deems just and proper.

## COUNT II
### Breach of Implied-in-Fact Contract

63.     Plaintiffs re-allege and restate paragraphs 1 through 48 above as if they were fully set forth herein.

64.     At all material times, Defendant Coventry knew that, with respect to the Non-Participating Claims, Plaintiffs were non-participating emergency medicine providers that staffed the emergency departments at Bayfront Health Dade City (f/k/a Pasco Regional Medical Center), Delray Medical Center, AMI Palm Beach Gardens Medical Center, Parrish Medical Center, Seven Rivers Regional Medical Center, Tampa General Hospital, Memorial Regional Hospital, Memorial Regional Hospital - North Campus, Memorial Regional Hospital South, Memorial Hospital Miramar, Memorial Hospital Pembroke, Memorial Hospital West, Memorial Urgent Care Center, Shands Lake Shore Regional Medical Center, Shands Live Oak Regional Medical Center, Shands Starke Regional Medical Center, Coral Gables Hospital, Good Samaritan Hospital, Hialeah Hospital, Lakeside Medical Center, Martin Medical Center, Martin Emergency Center, Martin Hospital South, North Shore Medical Center, North Shore Medical Center - FMC Campus, North Shore Medical Center - FMC FSE, Palmetto General Hospital, South Florida Baptist Hospital, St Mary's Medical Center, Tradition Medical Center, University of Miami Hospital, West Boca Medical Center in Boca Raton, West Boca Medical Center in Coral Spring, Lakewood Ranch Medical Center, Manatee Memorial Hospital, Memorial Emergency Center-Atlantic, Memorial Hospital of Jacksonville, Memorial Emergency Center Julington, Orange Park Medical Center, Parkwest Emergency Center, Winter Haven Hospital, NCH Baker Hospital, Naples Community Hospital North and Naples North East.

65.     At all material times, Defendant Coventry knew that Plaintiffs were obligated by law to examine any Coventry Member presenting to the emergency department and to provide stabilizing treatment to any such Coventry Member with an emergency medical condition, regardless of the individual's insurance coverage.

66.    At all material times, Defendant Coventry was obligated by law to cover and pay for the emergency medicine services received by Coventry Members at the hospitals and other licensed facilities staffed by the Plaintiffs.

67.    At all material times, Defendant Coventry was aware of its obligation to non-contracted providers such as the Plaintiffs and was aware that Plaintiffs provided professional emergency medical services to Coventry Members with the reasonable expectation and understanding that their services would be reimbursed by Defendant on their Non-Participating Claims at rates, under *quantum meruit*, reflecting the reasonable value of their services in the marketplace.

68.    At all material times, Defendant Coventry knew that Plaintiffs had not agreed to accept discounted rates from Defendant on Non-Participating Claims, nor had they agreed to be bound by Defendants' reimbursement policies or rate schedules.

69.    At all material times, Defendant Coventry was aware that, in arms-length negotiations with the parent entity of the Plaintiffs, its affiliates agreed to a rate of 75% of participating Plaintiffs' charges as representing the reasonable value of participating Plaintiffs' professional emergency medicine services in the marketplace.

70.    With full knowledge of its obligations as described in detail above, Defendant Coventry consistently and regularly approved of Coventry Members presenting to the emergency departments of the hospitals and other licensed facilities staffed by the Plaintiffs, approved of the Plaintiffs performing emergency medicine services in the treatment of Coventry Members and impliedly agreed to pay each of the Plaintiffs the reasonable value in the marketplace for the emergency medicine services its professionals rendered to Coventry Members.

71.     Defendant Coventry further acknowledged its responsibility for payment and its approval of Plaintiffs performing emergency medicine services in the treatment of Coventry Members by regularly and consistently paying the Plaintiffs' Non-Participating Claims for their services, albeit at a rate less than that to which Plaintiffs were entitled.

72.     At all material times, all necessary conditions precedent for Defendant Coventry to perform its obligations pursuant to the implied contract by issuing payment on the Non-Participating Claims to each of the Plaintiffs for the reasonable value of the services rendered to Coventry Members were met.

73.     At all material times, each Plaintiff submitted to Defendant Coventry its Non-Participating Claims for reimbursement for the emergency medicine services its professionals rendered to Coventry Members.

74.     At all material times, Defendant Coventry regularly and consistently issued payment on the Non-Participating Claims each of the Plaintiffs submitted for emergency medicine services rendered to Coventry Members, albeit at a rate less than the reasonable value of the services Defendant impliedly agreed to pay.

75.     Defendant Coventry breached its agreement with each of the Plaintiffs on the Non-Participating Claims by failing to pay it the reasonable value of the emergency medicine services its professionals provided to Coventry Members.

76.     Defendant Coventry sent the Plaintiffs Explanation of Benefits notices with its partial payment on the Non-Participating Claims that did not purport to be paying the reasonable value of the services in the marketplace, but instead cryptically noting, for example, that: "Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement."

77.    As a result of Defendant Coventry's breach of its implied contract to reimburse the Plaintiffs the reasonable value in the marketplace for their Non-Participating Claims for emergency medicine services they rendered to Coventry Members, each Plaintiff has suffered injury and is entitled to monetary damages from Defendant.

78.    Plaintiffs seek compensatory damages, as permitted by applicable law, in an amount, which will continue to accrue through the date of trial as a result of Defendant Coventry Health Care of Florida, Inc.'s continuing breach of contract, equal to the difference between the reasonable value of the services it provided to Coventry Members and the amount Defendant allowed and paid for those services, plus interest.

**WHEREFORE**, Plaintiffs pray that this Court:

Enter judgments against Defendant and for each Plaintiff in an amount representing the difference between the amounts paid by Defendant to Plaintiff for the emergency medicine services its professionals rendered to Coventry Members covered under commercial products to the date of the judgment and the reasonable value in the marketplace of those services, as determined by the finder of fact.

Decree that Defendant must pay each Plaintiff going forward for the emergency medicine services its professionals rendered to Coventry members at the lesser of their billed charges and the reasonable value of those services in the marketplace.

Award such further relief as this Court deems just and proper.

## COUNT III
### Unjust Enrichment/Breach of Implied-in-Law Contract

79.    Plaintiffs re-allege and restate paragraphs 1 through 48 above as if they were fully set forth herein.

**DUANE MORRIS LLP**
200 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

21

80.     Plaintiffs conferred a direct benefit upon Defendant Coventry by providing valuable professional emergency medicine services to Coventry Members with the approval of Defendant.  In exchange for premiums, Defendant owes Coventry Members an obligation to pay for the covered medical services they receive.  Defendant derives a direct benefit from the Plaintiffs' provision of professional emergency medicine services to Coventry Members, because it is through Plaintiffs' provision of those services that Coventry fulfills its obligations to its Members.

81.     There is no dispute that the professional emergency medicine services at issue provided by Plaintiffs were covered, because Defendant Coventry is required by law to cover emergency medical services and because Defendant adjudicated and paid the Non-Participating Claims for those services, albeit at an amount less than the reasonable value of the services in the marketplace.  When Plaintiffs provide covered professional emergency medicine services to Coventry Members, Defendant receives the benefit of having its contractual obligations to its Members discharged.

82.     In approving the Plaintiffs' provision of professional emergency medicine services to Coventry Members, Defendant Coventry was aware that Plaintiffs expected to be paid by Defendant for those services at the reasonable value of the services in the marketplace under *quantum meruit.*

83.     Defendant Coventry's liability as the party responsible for payment to the Plaintiffs for the services they provide to Coventry's Members is established by Defendant's approval of the services and Defendant's payment for the services, albeit at an amount less than what was owed.

84.     Defendant Coventry voluntarily accepted, retained and enjoyed, and continues to accept, retain and enjoy, the benefits conferred upon it by Plaintiffs, knowing that Plaintiffs expected to be paid on their Non-Participating Claims the reasonable value of their services in the marketplace.

85.     Defendant Coventry has failed to pay the reasonable value of the benefit conferred upon it by the Plaintiffs, in this case, the reasonable value of the professional emergency medicine services provided.  As a result, Defendant has withheld for itself monies that it should have paid to Plaintiffs for Plaintiffs' services and has received an unjustified windfall.

86.     By underpaying the Plaintiffs, Defendant Coventry has been unjustly enriched. Under the circumstances set forth above, it is unjust and inequitable for Defendant to retain the benefit it received without paying the value of that benefit; *i.e.*, by paying the Plaintiffs *quantum meruit*; i.e., the reasonable value in the marketplace of the professional emergency medicine services Plaintiffs provided to Coventry Members.

87.     Plaintiffs seek compensatory damages for the Non-Participating Claims, as permitted by applicable law, in an amount, which will continue to accrue through the date of trial as a result of Defendant Coventry's continuing wrongful conduct, equal to the difference between the reasonable value in the marketplace of the professional emergency medicine services it provided to Coventry Members and the amount Defendant paid for those services.

**WHEREFORE**, Plaintiffs pray that this Court:

Enter judgments against Defendant and for each Plaintiff in an amount representing the difference between the amounts paid by Defendant to Plaintiff for the

**DUANE MORRIS LLP**
200 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

23

emergency medicine services its professionals rendered to Coventry Members and the reasonable value of those services in the marketplace, as determined by the finder of fact.

Decree that Defendant must pay each Plaintiff going forward for the emergency medicine services its professionals rendered to Coventry members at the reasonable value in the marketplace of those services.

Award such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

Dated:  this 13th day of May, 2016

Of Counsel

Michael R. Gottfried, Esq.
Robert Zaffrann, Esq.
Duane Morris LLP
100 High Street, Suite 2400
Boston, MA  02110-1724
Telephone:  857.488.4200
Facsimile:  857.488.4201
MRGottfried@duanemorris.com
RZaffrann@duanemorris.com

Gregory A. Brodek, Esq.
Duane Morris LLP
88 Hammond Street, Suite 500
Bangor, ME 04401-4953
Telephone:  207.262.5400
Facsimile:  207.262.5401
GABrodek@duanemorris.com

**DUANE MORRIS LLP**
*Counsel for Plaintiffs*

By: /s/ Harvey W. Gurland, Jr.
    Harvey W. Gurland, Jr., P.A.
    Florida Bar No. 284033
    Felice K. Schonfeld, Esq.
    Florida Bar No. 266523
    Duane Morris LLP
    200 S. Biscayne Boulevard, Suite 3400
    Miami, FL 33131-2318
    Telephone: 305.960.2214
    Fascimile: 305.397.1874
    HWGurland@duanemorris.com
    FKSchonfeld@duanemorris.com

Filing # 44145697 E-Filed 07/19/2016 05:00:45 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2016-CA-012264-01

EMERGENCY SERVICES OF
ZEPHYRHILLS, P.A., INPHYNET
CONTRACTING SERVICES, LLC,
INPHYNET SOUTH BROWARD, LLC, IPN
EMERGENCY PHYSICIANS OF NORTH
FLORIDA, P.A., PARAGON
CONTRACTING SERVICES, LLC,
PARAGON EMERGENCY SERVICES, LLC
and SOUTHWEST FLORIDA EMERGENCY
MANAGEMENT, INC.,

        Plaintiffs,

vs.

COVENTRY HEALTH CARE OF FLORIDA,
INC.

        Defendant.

_____/

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant Coventry Health Care of Florida, Inc. ("Coventry") files this Answer and Affirmative Defenses to Plaintiffs' Complaint filed by Plaintiffs Emergency Services of Zephyrhills, P.A., Inphynet Contracting Services, LLC, Inphynet South Broward, LLC, IPN Emergency Physicians of North Florida, P.A., Paragon Contracting Services, LLC, Paragon Emergency Services, LLC and Southwest Florida Emergency Management, Inc., and state:

### I.    ANSWER

1.    Defendant admits that Plaintiffs' Complaint purports to bring an action against it, the merit of which is denied. Otherwise, denied.

- 2 -

2.      Defendant admits that Plaintiffs' Complaint purports to bring an action against it, the merit of which is denied. Otherwise, Plaintiffs have not identified the medical claims that form the basis of this lawsuit, as such, Defendant is without knowledge to admit or deny, therefore denied.

3.      Defendant denies the first four sentences of paragraph 3 of the Complaint as phrased. The statute and cited case speak for themselves. Defendant admits that Plaintiffs are non-participating providers with respect to certain benefit plans. Otherwise, denied.

4.      Defendant denies the first sentence of paragraph 4 of the Complaint as phrased. Otherwise, denied.

5.      Denied.

### Parties

6.      Defendant admits that it is licensed to conduct business as a health maintenance organization in the State of Florida. Defendant further admits these allegations insofar as personal jurisdiction is concerned. All remaining allegations are denied.

7.      Defendant is without sufficient knowledge to admit or deny as phrased, therefore denied.

8.      Defendant is without sufficient knowledge to admit or deny as phrased, therefore denied.

9.      Defendant is without sufficient knowledge to admit or deny as phrased, therefore denied.

10.      Defendant is without sufficient knowledge to admit or deny as phrased, therefore denied.

- 2 -

- 3 -

11.     Defendant is without sufficient knowledge to admit or deny as phrased, therefore denied.

12.     Defendant is without sufficient knowledge to admit or deny as phrased, therefore denied.

13.     Defendant is without sufficient knowledge to admit or deny as phrased, therefore denied.

## Jurisdiction and Venue

14.     Defendant admits these allegations insofar as subject-matter jurisdiction is concerned. Otherwise, denied.

15.     Defendant admits that venue is appropriate.

16.     Defendant admits that this case is appropriate for the Complex Business Litigation Section.

## Facts

17.     Defendant admits that Plaintiffs provide hospital based medical care and related services, generally. Otherwise, denied.

18.     Defendant admits that it provides access to health care services for its members through a variety of health care products and platforms. Otherwise, denied.

19.     Denied as phrased.

20.     Denied as phrased. Florida and federal laws speak for themselves.

21.     Plaintiffs have not identified the medical claims that form the basis of this lawsuit, as such, Defendant is without knowledge to admit or deny, therefore denied.

- 3 -

HOU:3700866.2

- 4 -

22. Defendant admits that Plaintiffs are non-participating providers with respect to certain benefit plans. Otherwise, Plaintiffs have not identified the medical claims that form the basis of this lawsuit, as such, Defendant is without knowledge to admit or deny, therefore denied.

23. Defendant admits that certain Plaintiffs are non-participating providers with respect to certain benefit plans. Otherwise, Plaintiffs have not identified the medical claims that form the basis of this lawsuit and, as such, Defendant is without knowledge to admit or deny, therefore denied.

24. Plaintiffs have not identified the medical claims that form the basis of this lawsuit and, as such, Defendant is without knowledge to admit or deny. Therefore, denied.

25. There is no allegation of fact and, as such, no response is required. The statute speaks for itself. To the extent any response is required, paragraph 25 is denied.

26. Denied. The statute and cited case speak for themselves.

27. Denied. The statute and cited case speak for themselves.

28. Denied. The statute and cited case speak for themselves.

29. The statute speaks for itself. Otherwise, denied.

30. Plaintiffs have not identified the medical claims that form the basis of this lawsuit, as such, Defendant is without knowledge to admit or deny, therefore denied.

31. Plaintiffs have not identified the medical claims that form the basis of this lawsuit and, as such, Defendant is without knowledge to admit or deny. Therefore, denied.

32. The agreements identified in this allegation, which are not attached to the Complaint speak for themselves, but otherwise denied as phrased.

33. Denied.

34. Denied.

HOU:3700866.2

- 5 -

35.     Denied.

36.     Defendant is without knowledge to admit or deny, therefore denied.

37.     Denied.

38.     Denied.

39.     Plaintiffs have not identified the medical claims that form the basis of this lawsuit and, as such, Defendant is without knowledge to admit or deny.  Therefore, denied.

40.     Denied as phrased. The Explanations of Benefits speak for themselves.

41.     Denied.  The statute speaks for itself.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Defendant denies the first three sentences of paragraph 45 of the Complaint. Defendant is without knowledge to admit or deny the allegation in the fourth sentence of paragraph 45 of the Complaint, therefore denied.

46.     Defendant denies the first sentence of paragraph 46 of the Complaint. The cited case speaks for itself. Otherwise, denied.

47.     Defendant admits that Plaintiffs' Complaint purports to bring an action against it, the merits of which are denied. Otherwise, denied.

48.     Denied.

## COUNT I
### Violation of Section 641.513(5)

49.     Defendant restates and incorporates its responses to the allegations contained in paragraphs 1 through 48 of the Complaint.

HOU:3700866.2

- 6 -

50.     Defendant admits that it is licensed to conduct business as a health maintenance organization in the State of Florida. Otherwise, Plaintiffs have not identified the medical claims that form the basis of this lawsuit and, as such, Defendant is without knowledge to admit or deny.  Therefore, denied.

51.     Plaintiffs have not identified the medical claims that form the basis of this lawsuit and, as such, Defendant is without knowledge to admit or deny.  Therefore, denied.

52.     There is no allegation of fact and, as such, no response is required.  The statute speaks for itself.  To the extent any response is required, paragraph 52 is denied.

53.     The statute speaks for itself.  Otherwise, denied.

54.     Denied.

55.     Plaintiffs have not identified the medical claims that form the basis of this lawsuit, as such, Defendant is without knowledge to admit or deny, therefore denied.

56.     Plaintiffs have not identified the medical claims that form the basis of this lawsuit, as such, Defendant is without knowledge to admit or deny, therefore denied.

57.     Plaintiffs have not identified the medical claims that form the basis of this lawsuit, as such, Defendant is without knowledge to admit or deny, therefore denied.

58.     Denied.

59.     Denied. Florida cases speak for themselves.

60.     Denied.

61.     Denied.

62.     Defendant denies that Plaintiffs are entitled to any requested relief.

- 6 -

- 7 -

## COUNT II
## Breach of Implied-in-Fact Contract

63.    Defendant restates and incorporates its responses to the allegations contained in paragraphs 1 through 62 of the Complaint.

64.    Plaintiffs have not identified the medical claims that form the basis of this lawsuit, as such, Defendant is without knowledge to admit or deny, therefore denied.

65.    Denied.

66.    Plaintiffs have not identified the medical claims that form the basis of this lawsuit, as such, Defendant is without knowledge to admit or deny, therefore denied.

67.    Denied.

68.    Plaintiffs have not identified the medical claims that form the basis of this lawsuit, as such, Defendant is without knowledge to admit or deny, therefore denied.

69.    Denied.

70.    Denied.

71.    Denied.

72.    Denied.

73.    Plaintiffs have not identified the medical claims that form the basis of this lawsuit, as such, Defendant is without knowledge to admit or deny, therefore denied.

74.    Denied.

75.    Denied.

76.    Denied. The Explanations of Benefits speak for themselves.

77.    Denied.

78.    Defendant denies that Plaintiffs are entitled to any requested relief.

- 7 -

HOU:3700866.2

## COUNT III
### Unjust Enrichment/Breach of Implied-in-Law Contract

79.     Defendant restates and incorporates its responses to the allegations contained in paragraphs 1 through 78 of the Complaint.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.

87.     Defendant denies that Plaintiffs are entitled to any requested relief.

### General Denials

88.     Any allegation not specifically addressed above is denied.

89.     All wherefore clauses are denied.

90.     Defendant reserves the right to amend or supplement its responses to the allegations above or any of the affirmative defenses below as appropriate.

### II.     AFFIRMATIVE DEFENSES

1.     Plaintiffs have not identified the medical claims that form the basis of this lawsuit, but to the extent that Plaintiffs seek relief on medical claims involving emergency services and care accruing prior to April 6, 2015, Plaintiffs' complaints were litigated and settled in the Settlement Agreement dated February 17, 2010, by and among Vista Healthplan, Inc. and Peter F. Merkle, M.D., P.A., Jeremy S. Weinberger, M.D., P.A. and Michael Canning, M.D., P.A., the Class Representatives, and Class Counsel (the "Merkle Class Action Settlement").  Accordingly,

- 8 -

Plaintiffs' claims are barred in whole, or in part, by *res judicata* and the Merkle Class Action Settlement.

2. Plaintiffs' claims are barred, in whole or in part, by the release in the Merkle Class Action Settlement.

3. Plaintiffs have not identified the medical claims that form the basis of this lawsuit, but to the extent that Plaintiffs seek relief on medical claims involving emergency services and care accruing prior to April 6, 2015, Plaintiffs have breached the Merkle Class Action Settlement Agreement, including, not only the Release and Covenant Not To Sue provisions, but also, *inter alia*, the (i) Compliance Dispute Resolution provision by failing to comply with the dispute resolution procedures and/or (ii) the New Florida ER Fee Schedule provision by failing to accept payments made in compliance with that Fee Schedule. Plaintiffs' claims are barred, in whole or in part, for this additional reason.

4. Plaintiffs have not identified the medical claims that form the basis of this lawsuit, but to the extent that Plaintiffs seek relief on medical claims involving emergency services and care accruing prior to April 6, 2015, Plaintiffs accepted Coventry's payments based on an agreed-upon payment methodology in the Merkle Class Action Settlement Agreement. Plaintiffs further accepted payments without complaint. Coventry relied upon this conduct by Plaintiffs in issuing these payments and without knowledge of any complaint. Plaintiffs cannot complain now about payments at rates to which they agreed and/or acquiesced in accepting without complaint. Plaintiffs' claims are therefore barred, in whole or in part, by laches and/or estoppel. Alternatively, Plaintiffs, with full knowledge of Coventry's payment methodology under the Merkle Class Action Settlement Agreement, ratified Coventry's payment methodology under that Agreement. Alternatively, Plaintiffs intentionally relinquished any right to complain about

Coventry's payment methodology by the implied conduct in knowingly accepting the higher payments under the Merkle Class Action Settlement.

5. Plaintiffs failed to state a claim for relief against Defendants because there is no private right of action under Florida Statute § 641.513(5).

6. Plaintiffs cannot recover upon their claims to the extent the services were not covered under the terms of the members' health benefit plans or Florida Statute § 641.513, including but not limited to the extent to which there was no medical emergency, the services were not medically necessary, were experimental or investigational, and/or were not pre-authorized or pre-certified to the extent required.

7. Plaintiffs' charges are not covered to the extent that they exceeded usual, customary, and/or reasonable charges, or the prevailing fees or recognized charges, under the terms of the plans or any applicable statute or regulation.

8. Plaintiffs cannot recover to the extent they failed to comply with any applicable statute, including but not limited to Florida Statutes §§ 641.513, 641.3155, or 627.6131.

9. Plaintiffs' claims seeking 75% of their full billed charges are void against public policy and existing statutory authority and judicial precedent.

10. Plaintiffs cannot recover to the extent they have asserted medical claims that were denied pursuant to the terms of the health benefit plans. Any benefit determinations concerning Plaintiffs' medical claims were proper and correct under the terms of the health benefit plans.

11. Plaintiffs have not identified the medical claims that form the basis of this lawsuit. However, to the extent Plaintiffs failed to perform all conditions necessary to recover on any medical claim in this lawsuit, including but not limited to Plaintiffs' (i) failure to exhaust administrative remedies under the members' health benefit plans, (ii) failure to timely and

- 10 -

properly submit medical claims, (iii) failure to timely appeal any claim determinations, and (iv) failure to submit proof of covered services, Plaintiffs' claims are barred for failure of such conditions precedent.

12.     Plaintiffs' claims are barred in whole or in part to the extent there were no effective assignments of benefits for the reimbursement of the medical claims.

13.     As to the amount that has been paid and accepted on claims for which Plaintiffs received notification concerning adjudication of the claims without contest, Defendants affirmatively plead accord, satisfaction, and payment. Plaintiffs are also barred from seeking 75% of their full billed charges on such claims.

14.     Plaintiffs' claims are barred in whole or in part because they are governed by a prior settlement.

15.     Plaintiffs' claims fail to the extent that they are barred by limitations, including any applicable statutes of limitations, contractual limitations, and/or plan-term limitations.

16.     Defendant asserts the defenses of credit, recoupment, and offset with respect to any payment made in error or by mistake to Plaintiffs and/or any overpayment made to Plaintiffs.

17.     Plaintiffs' medical claims are not covered under the plans to the extent that the patients were not eligible members covered under the terms of the plans at the time that the services at issue were rendered.

18.     Plaintiffs' claims are barred by the doctrines of waiver, laches, and/or unclean hands, including but not limited to Plaintiffs' failure to timely submit and/or dispute reimbursable claims and Plaintiffs' submission of claims that far exceed the usual, customary, or reasonable amount in bad faith.

- 11 -

19.     Damages allegedly sustained by Plaintiffs, if any be proved, were caused in whole or in part by Plaintiffs' own acts and omissions, including but not limited to Plaintiffs' failure to submit claims for reimbursable amounts and services.

### III.     PRAYER

WHEREFORE, Defendant prays that the Court enter judgment in its favor, and against Plaintiffs, and for the award of attorneys' fees, costs of court, and such other and further relief as this Court deems just and proper.

Respectfully submitted

By: *s/ Richard P. Hermann, II*
SHAPIRO, BLASI, WASSERMAN &
HERMANN, P.A.
*Counsel for Defendants*
7777 Glades Road, Suite 400
Boca Raton, Florida 33434
RICHARD P. HERMANN, II, ESQ
Florida Bar No. 110019
DAVID J. DEPIANO, ESQ.
Florida Bar No. 0055699
Telephone: (561) 477-7800
Facsimile:  (561) 477-7722

COUNSEL FOR DEFENDANT COVENTRY
HEALTH CARE OF FLORIDA, INC.

- 12 -

HOU:3700866.2

- 13 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by E-service this 19th day of July, 2016 upon: Harvey W. Gurland, Jr., P.A., *HWGurland@duanemorris.com*, Felice K. Schonfeld, Esq., *FKSchonfeld@duanemorris.com*, Duane Morris LLP, 200 S. Biscayne Boulevard, Suite 3400, Miami, Florida 33131-2318; Michael R. Gottfried, Esq, *MRGottfried@duanemorris.com*; Robert Zaffrann, Esq. *RZaffrann@duanemorris.com*; 100 High Street, Suite 2400, Boston Massachusetts 02110-1724; and Gregory A. Brodek, Esq. *GABrodek@duanemorris.com*; 88 Hammond Street, Suite 500, Bangor, Maine 04401-4953.

*s/ Richard P. Hermann, II*
Richard P. Hermann, II

- 13 -

HOU:3700866.2

Filing # 44888292 E-Filed 08/05/2016 02:19:30 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS DIVISION

CASE NO.:  16-012265 CA

EMERGENCY SERVICES OF
ZEPHYRHILLS, P.A., INPHYNET
CONTRACTING SERVICES, LLC,
INPHYNET SOUTH BROWARD, LLC, IPN
EMERGENCY PHYSICIANS OF NORTH
FLORIDA, P.A., PARAGON CONTRACTING
SERVICES, LLC, PARAGON EMERGENCY
SERVICES, LLC and SOUTHWEST FLORIDA
EMERGENCY MANAGEMENT, INC.,

          Plaintiffs,

vs.

COVENTRY HEALTH CARE OF FLORIDA,
INC.,

          Defendant.

_____/

## REPLY TO AFFIRMATIVE DEFENSES

Plaintiffs, Emergency Services of Zephyrhills, P.A., InPhyNet Contracting Services,

LLC, InPhyNet South Broward, LLC, IPN Emergency Physicians of North Florida, P.A.,

Paragon Contracting Services, LLC, Paragon Emergency Services, LLC and Southwest Florida

Emergency Management, Inc. (collectively "Plaintiffs"), Reply to the Affirmative Defenses of

Defendant Coventry Health Care of Florida, Inc., dated July 19, 2016, as follows:

1.      Plaintiffs deny each and every affirmative defense that Defendant alleges in its

Answer.

2.      Plaintiffs are reviewing the matters raised in the Affirmative Defenses.  Plaintiffs

reserve the right to amend and supplement this Reply to Affirmative Defenses after they have

had the opportunity to fully review the matters raised in the Affirmative Defenses, including without limitation, after receipt of documents mentioned therein but which Defendant did not attach to the Affirmative Defenses.

Dated:  this 5th day of August, 2016

Of Counsel

Michael R. Gottfried, Esq.
Robert Zaffrann, Esq.
Duane Morris LLP
100 High Street, Suite 2400
Boston, MA  02110-1724
Telephone:  857.488.4200
Facsimile:   857.488.4201
MRGottfried@duanemorris.com
RZaffrann@duanemorris.com

Gregory A. Brodek, Esq.
Duane Morris LLP
88 Hammond Street, Suite 500
Bangor, ME 04401-4953
Telephone:  207.262.5400
Facsimile:   207.262.5401
GABrodek@duanemorris.com

**DUANE MORRIS LLP**
*Counsel for Plaintiffs*

By:  /s/ Harvey W. Gurland, Jr.
     Harvey W. Gurland, Jr., P.A.
     Florida Bar No. 284033
     Felice K. Schonfeld, Esq.
     Florida Bar No. 266523
     Duane Morris LLP
     200 S. Biscayne Boulevard, Suite 3400
     Miami, FL 33131-2318
     Telephone: 305.960.2214
     Facsimile:  305.397.1874
     HWGurland@duanemorris.com
     FKSchonfeld@duanemorris.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true a correct copy of the foregoing was electronically filed this 5th day of August, 2016 with the Clerk of the Circuit Court using the Florida ePortal and served via an automatic email generated by the Florida Courts E-Filing Portal to: **Richard P. Hermann, II, Esquire** and **David J. DePiano, Esq.**, rphermann@sbwlawfirm.com, floridaservice@sbwlawfirm.com, djdepiano@sbwlawfirm.com, rbarna@sbwlawfirm.com, Shapiro, Blasi, Wasserman & Hermann, P.A., 777 Glades Road, Suite 400, Boca Raton, Florida 33434.

By: /s/ Harvey W. Gurland, Jr.
    Harvey W. Gurland, Jr.

DM2\7027226.2

**DUANE MORRIS LLP**
200 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 16-12265-CA-40

EMERGENCY SERVICES OF
ZEPHYRHILLS, P.A., et al

    Plaintiff,

    vs.

COVENTRY HEALTH CARE OF
FLORIDA, INC.,

    Defendant,

_____/

                                    ORDER
              DETERMINING TRIAL JUDGE

**THIS CAUSE** coming on to be heard on the Court's Own Motion to Determine the Trial Judge for this case, and the Court being fully advised in the premises, it is

        **ORDERED AND ADJUDGED** that this cause be reassigned to another section of the Court by the Clerk using the blind filing system.

    **DONE AND ORDERED** at Miami, Dade County, Florida on this ___ day of May , 2016

    JACQUELINE HOGAN SCOLA
                                 ADMINISTRATIVE JUDGE
                 for ≈JENNIFER D. BAILEY

**I HEREBY CERTIFY** that this case has been reassigned to Section_____ , in compliance with the above Court Order.

                             **HARVEY RUVIN, CLERK**

                          BY_____
                          Deputy Clerk

cc: mrgottfried@duanemorris.com
    rzaffran@duanemorris.com
    hwgurland@duanemorris.com
    fkschonfeld@duanemorris.com
    gabrodek@duanemorris.com